CALLOWAY, J., Pro Tempore.
Iiln these two consolidated[1] appeals, the Louisiana Board of -Ethics' (the “Board”) *62 appeals from judgments rejecting the Board’s petition to disqualify candidates for falsely certifying that they owed no outstanding fees pursuant- to the Code of Governmental Ethics. For the following reasons, we affirm.
Board of Ethics v. Benjamin Arnold, No. 50,553-CA
On September 8, 2015, Mr. Benjamin Arnold filed with the Clerk of the First Judicial District Court in Caddo Parish a notice of candidacy for the office of Caddo Parish Commission, District 10. On that form, Arnold certified, inter alia, that:
I do not owe any outstanding fines, fees, or penalties pursuant to the Code o.f Governmental Ethics.
On September 17, 2015, the Board filed a lawsuit against Mr. Arnold in the First Judicial District Court objecting to Arnold’s candidacy. The' Board’s petition alleged that Arnold’s certification was false when made because Arnold owed a $2,500 late fee assessed against him by the Board for failure to timely file a 2013 Tier 2 Candidate Personal Financial Disclosure Statement.
At trial on September 21, 2015, the Board offered and the trial court accepted into evidence the following exhibits:
Exhibit 1: Arnold’s September 8, 2015, Notice of Candidacy;
Exhibit 2: A December 11, 2014, letter from the Board to Arnold notifying Arnold that he had been assessed with a late fee of $2,500 under La. R.S. 42:1124.4 for failure to file a Tier 2 Candidate, Personal Financial Disclosure ^Statement for. 2013. Arnold was required to file this statement under La. R.S. 42:1124.4 because he was a candidate for election on November 4, 2014. This letter advised Arnold that he could pay the assessment or dispute it by requesting a waiver or by appealing.
This letter was sent'by certified mail and Arnold signed for the mail on December 13,2014.
Exhibit 3: A January 30, 2015, letter from the Board to Arnold notifying Arnold that the late fee had not been paid and affording Arnold an addition- - al 15 days to pay before the Board transferred the late fee to the Attorney General’s office for . collection. The letter also notified Arnold that he still was obligated to file the 2013 Financial Disclosure Statement and, finally, that failure to pay the late fee may have an adverse affect on his ability to run for public office.
This letter was also sent by certified mail; the receipt was signed on February 2, 2015, by “Ben Arnold” in handwriting that ’ differs from the writing on the December 13, 2014, receipt.
Exhibit 4: A Transmittal Sheet dated April 17, 2015, from the Board to the Louisiana Attorney General requesting that the Attorney General pursue collection of the unpaid $2,500 late fee from Arnold.
Exhibit 5: A July 17, 2015, letter from the Board to Arnold notifying him that its previous Late Fee Order had become final and absolute and that the Board would object to Arnold’s candidacy for public office so long as the ' Late Fee Order remained unsatisfied prior-to qualifying. ■ -
This letter is not accompanied by a certified mail receipt.
Exhibit 6: Exhibit 6 is a duplicate of ■ Exhibit 4.
*63 Exhibit 7; A September 11, 2015, affidavit from Stacey T. Landry, counsel for the Board, stating that Arnold owed the $2,500 late fee to the Board on the date of Arnold’s qualification for office and that the fine had still not been paid.
Exhibit 8: A September 16, 2015, affidavit from Robin Gremillion, Disclosure Section Director.for the,Board, stating that as |oof September 11, 2015, Arnold had not paid the $2,500 late fee.
Exhibit 9: An email from Ms. Landry to several persons stating that ,a payment of $2,000 had 'been made on September 17, 2015,. toward Mr. Arnold’s late fee, and that Arnold still owed $991.99 (including court - costs).
Second This document labeled as a .second Exhibit 9 is a
Exhibit 9: September 16, 2015, affidavit from Deborah Grier, Executive Secretary for the Board, certifying that the “attached” Exhibits 2 through 6 were true copies of the Board’s records. .No exhibits are attached to this affidavit.
Exhibit 10: This exhibit is a second copy .- of Exhibit 1.
Mr. Arnold objected to the part of Exhibit 3 that included the certified mail receipt; he urged that the signature on this receipt was not his.
Two witnesses testified at the trial: Robin Gremillion, Director of the Board’s Disclosure Division, and the candidate, Benjamin Arnold.
Ms. Gremillion explained her role at the Board and the Board’s procedure for assessing a láte fee against ⅛ candidate; she testified that this procedure was followed in Mr. Arnold’s case. She said that she had personally spoken with Arnold typice about the matter. Her first conversation with Arnold was “in. February shortly after he received the demand letter” where she explained to Arnold that he could pay the fee prior to it being transferred for collection. Her second conversation with Arnold was in June after Arnold had received a letter from the treasury demanding payment; she said she told Arnold that because the matter had béeñ transferred for collection, 'Arnold would have to contact-the Attorney General to arrange payment.
14Arnold testified that he remembered receiving a document from the Board in December 2014 but did not recall receiving a letter in. February 2015 and denied that he signed the certified mail receipt , for the second letter. .Arnold said that he contacted the Board in December 2014, after receiving the notice, and a second time on an unspecified date to try to resolve the situation without incurring a penalty. He testified that he believed that he had completed all -of the paperwork required with respect to his unsuccessful bid for office in November 2014.
Arnold also testified that he received personal service’ of an unspecified document from the Attorney General’s office in August, and that- this document had a court date of September 21 (the day of trial). Arnold explained that when he filed his notice of candidacy and executed the certification, he did not believe that he owed any outstanding fees or fines. Arnold said:
A: I actually called and spoke with the attorney who was over the case, Mr, Scott Smith, he told me that I would-' have an opportunity September 21st, the morning, this morning, to come to Baton Rouge, argue my case, and determination would be made at that time.
*64 Q: Okay. So you didn’t have a final judgment and today would be your day in court?
A: That’s correct.
Q: So when you completed that form, did you falsely certify that you did not owe money?
A: No, absolutely not.
Arnold said that he paid $2,000 toward his late fee the Thursday before trial and paid the remaining $991.99 the previous Friday. In rebuttal, the Board goffered into evidence an uncertified copy of pleadings filed by the Attorney General’s office in Mr. Arnold’s case, but the trial court refused to admit the pleadings because they were uncertified. As rebuttal to Mr. Arnold’s assertion that he had filed all the required paperwork, Ms. Gremillion testified that Arnold did not file the 2013 Personal Financial Disclosure Statement that led to the assessment of the late fee.
After considering the evidence and hearing further argument, the court took the matter under advisement. On September 22, 2015, at 9:30 a.m., the court signed a judgment denying the Board’s challenge to Mr. Arnold’s candidacy; the court did not supply reasons for its ruling. The Board timely took an appeal.
Board of Ethics v. John Russell McGrew, No. 50,554-CA
On September 9, 2015, at 11:26 a.m., John McGrew filed with the Clerk of the First Judicial District Court in Caddo Parish a notice of candidacy for the office of Sheriff. On that form, McGrew certified, inter alia, that:
I do not owe any outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics.
On that same day, at 3:51 p.m., McGrew paid to the Attorney General, in full, a $2,500 late fee he had been assessed by the Board for failure to file a Personal Financial Disclosure Statement. The qualifying period for this office remained open at this time and did not end until the next day.
On September 17, 2015, the Board filed a lawsuit against Mr. McGrew in the First Judicial District Court objecting to Arnold’s candidacy. The Board’s petition alleged that McGrew’s certification was false when | f,made because at the time of filing of the notice of candidacy, McGrew still owed the $2,500 late fee assessed against him by the Board for failure to timely file a 2012 Tier 2 Candidate Personal Financial Disclosure Statement.
At the September 21, 2015, trial of this case, the following exhibits were introduced:
Exhibit 1: McGrew’s Notice of Candidacy reflecting the time and date of filing as 11:26 a.m. on September 9, 2015.
Exhibit 2: A January 6, 2015, letter from the Board to “John Russell McGrew, Sr.”[2] informing him that the Board had assessed him with a $2,500 late fee for failure to timely file a Tier 2 Annual Personal Financial Disclosure Statement for 2012. This letter and accompanying documentation is essentially the same as that in Mr. Arnold’s case.
The letter was sent by certified mail and was signed for by Cindy McGrew on January 12, 2015.
Exhibit 3: A June 3, 2015, letter from the Board to “John Russell McGrew, Sr.” notifying him that he had 15 days from the date of the letter to pay the *65 late fee or the matter would be turned over to the Attorney General’s office for collection. Like the letter in Arnold’s case, the letter notified McGrew that failure to pay the late fee may adversely impact his ability to run for public office in the future.
This letter was not sent by certified mail.
Exhibit 4: A July 17, 2015, letter from the Board to “John Russell McGrew, Sr.” notifying him that its previous Late Fee Order had become final and absolute and that the Board would object to McGrew’s candidacy for public office so long as the Late Fee Order remained unsatisfied prior to qualifying.
17This letter was not sent by certified mail.
Exhibit 5: A Transmittal Sheet dated July 13, 2015, from the Board to the Louisiana Attorney General requesting that the Attorney General pursue collection of the unpaid $2,500 late fee from McGrew.
Exhibit 6: A September 15, 2015, affidavit from Stacey T. Landry, counsel for the Board, stating that at the time and date of McGrew’s qualification, he still owed the $2,500 late fee, and that McGrew paid the fee to the Attorney General at 1:48 p.m. on September 9, 2015.
Exhibit 7: A September 16, 2015, affidavit from Deborah Grier, Executive Secretary for the Board, certifying that the “attached” Exhibits 2 through 5 were true copies of the Board’s records. No exhibits are attached to this affidavit.
The witnesses at trial were again Ms. Gremillion and the candidate. Ms. Gremil-lion again testified about her duties with the Board and outlined the procedure the Board follows when assessing a late fee to a candidate. She testified that she had spoken with McGrew twice. The first conversation, in June 2015, concerned the demand letter that McGrew received, and Ms. Gremillion explained that she told McGrew that since the late fee assessment had become final, he would have to pay the fee. Ms. Gremillion spoke with Mr. McGrew a second time on the first day of qualifying, September 8, 2015; she testified that she told McGrew that he would have to pay the late fee in order to qualify.
McGrew testified that in 2012, he held the office of Constable in Caddo Parish. He admitted that Exhibit 2 had been sent to his home address and that the certified receipt had been signed by his daughter-in-law who was also his secretary. McGrew claimed that in response to this demand, he | ¿filed an appeal; however, he had no record of his filing to submit to the court and did not recall the outcome of the appeal.
McGrew explained that he called the Board on September 8 to try to pay his late fee but was told by the Board that he had to pay the Attorney General. He said that he talked to the Attorney General’s office on September 8 and paid his fine to that office on September 9; he said that his payment “was about three hours in violation.”
After hearing the evidence, the Court stated, in part:
In this particular case, we’re talking about a two hour difference between filing and paying the fine. He attempted to pay the fine the day before by contacting both the Board of Ethics and the A.G.’s office and was told what to do and did it on the next day. As such, I will construe this in favor of Mr. McGrew because of only a two hour difference and efforts that were made to *66 pay the ñne the day before, therefore, I will deny the Board’s request..
The judge signed a judgment at 9:25 a.m. on September' 22, 2015, and the Board timely appealed. ■
. DISCUSSION
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. Landiak v. Richmond, 05-0758 (La.3/24/05), 899 So.2d 535, 541.
Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections “so as to promote rather than defeat candidacy,” ... Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office.
[[Image here]]
|fl[T]he party on which the burden of proof rests must establish a prima facie case. If that.party fails to carry his burden of proof, the opposing party is not required to present any countervailing evidence. On the other hand, once the party bearing the burden of proof has established a prima facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case.
Id., internal citations omitted.
A trial- court’s factual findings are accorded great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). After reviewing the entire record, the appellate court may reverse the trier of fact’s findings if there is no reasonable factual basis for such findings, and the -.record establishes that the trier of fact was clearly- wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
Even where the appellate court believes its inferences are more reasonable than the fact finder’s, reasonable determinations and inferences of fact should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial 'court’s findings are reasonable based upon the entire record and evidence, an appellate court may not reverse those findings. even if it is convinced that had it been sitting as the trier of fact it would have weighed that evidence differently. Housley v. Cerise, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between' the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
11ftA person who fails to file a required financial disclosure statement under La. R.S. 18:1495.7 is subject to penalties as set forth in the Code of Governmental Ethics, specifically La. R.S. 42:1124.4. In both of these cases, the candidates had been assessed a late fee by the Board of Ethics for failing to timely file financial disclosure statements.' La. R.S. 42:1157 provides, in part:
(d) When' all delays for a x’equest for waiver or appeal of late filing fees have expired, a final order of the Board of •Ethics or its staff shall become executo-ry and may be enforced as any other money judgment. The Board of Ethics may file civil proceedings to collect such late filing fees in a court of competent *67 jurisdiction. The proceedings shall be. .conducted pursuant to the relevant pro-.. visions of the Louisiana Code of Civil Procedure.
At the time the candidates submitted their notice of candidacy, the'Board’s final orders had become executory, yet the’candidates' had not paid the fines. Arnold explained that he believed that his lafe fee was not yet final at the time he certified that he owed no late fee. However, Arnold’s stated subjective belief that his late-fee was not yet final is of no consequence to the determination of whether the fee was actually final, and the'Board presented sufficient proof to demonstrate that Arnold’s late fee was final under La. R.S. 42:1157(A)(l)(d) prior to qualifying.
' Both candidates actually paid their late fees in full prior to the commencement' of the trial of the cases, and McGrew paid his' fee prior to the close of qualifying. The Board argues that both of these candidates are nevertheless disqualified by operation of law because 'their certification that they owed ’no late fees was false when filed.
La. R.S. 18:463 provides, in part:
taJ-U(2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
[[Image here]]
(vii) That he does not owe’any outstanding fines, fees, or penalties pursuant to' the Code of Governmental Ethics.'
[[Image here]]
(c) For the purposes of this. Paragraph:
[[Image here]]
(ii) “Outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics” shall mean a fine, fee, or penalty equal to an amount of two hundred fifty dollars or more imposed by the Board of Ethics for which all appeals have been exhausted.
(iii) “Outstanding, fine, fee, or penalty” shall not mean any fine, fee, or penalty that has been paid in full as. of the time of the filing of the notice of candidacy.
La. R.S. 18:492 provides, in part:
A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
[[Image here]]
(6) The defendant falsely certified on his notice of candidacy that he does not. owe any outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics as provided in R.S. 18:463(A)(2).-
La. R.S. 18:494 provides:
A. Disqualification, When an objection to candidacy is sustained on the ground' that the defendant 'failed to qualify for the primary election in the manner prescribed by-law, that the defendant failed ■ to qualify for the primary election within the time prescribed by law, or that the defendant does not meet the qualifications for the office he’ seeks, the final judgment shall disqualify the defendant as a candidate in the primary election for' the office for which he failed to qualify properly.
|iaB. Withdrawal.' When an objection to candidacy is sustained on the ground that the defendant is prohibited by law from becoming a candidate for one or more of the offices for which he qualified in the primary election, the final , judgment shall order the defendant to remove the grounds for the objection by withdrawing from the primary election for one or more of the offices. If the defendant fails to comply with this judgment within twenty-four hours after it becomes definitive, the court shall render judgment disqualifying the defendant as a candidate for all of the offices for which he qualified in the primary election..
*68 When qualifying, McGrew knew that he owed the fee whereas Arnold testified that he did not believe that he owed the fee. In both cases, the Board put on evidence sufficient to establish a prima facie case that the candidates actually owed the late fees when they qualified. However, we conclude that in both cases, the trial court correctly refused to disqualify the candidates.

Benjamin Arnold

Although Mr. Arnold actually paid his late fee prior to trial, he testified that at the time he qualified, he did not believe that his obligation to pay that fee had been finally determined. He testified that the source of his belief was a conversation with an attorney with the Attorney General’s office, and further that he believed that the final determination about the finality of the late fee would have been made at a hearing in Baton Rouge that, coincidentally, had been fixed for the same day that trial of the disqualification lawsuit was held in Shreveport. Although the Board attempted to counter Mr. Arnold’s testimony with documentation from the Attorney General’s office, the trial court refused to accept that material into evidence because it was not properly certified. This documentation does not 1 ^appear in the appellate record because the Board did not make a proffer of the material.
Disqualification of a candidate under La. R.S. 18:492(A)(6) requires proof that the candidate “falsely” certified that he does not owe any outstanding fees pursuant to the Code of Governmental Ethics. The trial court’s apparent conclusion that Mr. Arnold’s certification was not “falsely” made is not manifestly erroneous on this record. Arnold explained in detail the sequence of his contacts with the Board and denied that he was aware of the final determination of his late fee. He further argued that the signature on the certified mail receipt for the Board’s second mailing was not his and that he was unaware of this document. We observe that Arnold’s testimony about his belief, based on communication with the Attorney General’s office, that the fine was not yet final was unrebutted by admissible evidence. Compare Louisiana Bd. of Ethics v. Wilson, 2014-925 (La.App. 3rd Cir.9/9/14), 161 So.3d 785, 788, writ denied, 2014-1908 (La.9/15/14), 148 So.3d. 938, where the court of appeal upheld a trial court’s determination, based upon a credibility call, that a candidate reasonably believed he owed no fee when qualifying.

John Russell McGrew

The trial court concluded that McGrew should not be disqualified from candidacy because he paid the late fee he admittedly owed within hours after filing his notice of candidacy.
We conclude that disqualification of Mr. McGrew as a candidate for sheriff is unwarranted because McGrew paid his late fee in full prior to the 114close of qualifying for the office he seeks. La. R.S. 18:494 supplies the remedies for a successful objection to candidacy. La. R.S. 18:494(A) supplies the remedy for those objections to candidacy listed in La. R.S. 18:492(A)(1) to (3); La. R.S. 18:494(B) supplies the remedy for the objection listed in La. R.S. 18:492(A)(4). No explicit remedy is provided by the article for an objection based on La. R.S. 18:492(A)(5)-(7). Although La. R.S. 18:494 must be read in conjunction with La. R.S. 18:492(5)-(7) to avoid rendering the latter provisions meaningless, we read the article liberally in favor of candidacy. We hold that an objection to candidacy based upon La. R.S. 18:492(5)-(7) cannot serve as a basis to disqualify a candidate when the candidate cures the defect with his notice of candidacy within the qualifying period.
*69 Because McGrew paid his late fee in full prior to the end of qualifying, he would plainly have been entitled to file his notice of candidacy at that time. We believe it would be an unnecessary duplication of effort to require him to file a second notice of candidacy after filing the first notice of candidacy and then paying his late fee prior to the end of qualifying. La. R.S. 18:494 does not provide for the disqualification of a candidate who files an original notice of candidacy that is defective under La. R.S. 18:492A(5)-(7) but who then cures the defect during the qualifying period.
CONCLUSION
For the above reasons, both of the district court’s judgments in these cases are affirmed.
AFFIRMED.

. Prior to oral argument, this Court consolidated these appeals for oral argument, and *62 we now hereby consolidate the appeals for disposition by opinion,

. The candidate, who qualified under the name "John Russell McGrew,” did not dispute that he was the same person named in these documents as "John Russell McGrew, Sr.”