DREW, J.
| TThe Louisiana Board of Ethics (the “Board”) appeals from a judgment of the Third Judicial District Court, Lincoln Parish, the Hon. Thomas Rogers presiding, rejecting the Board’s challenge to the candidacy of Mr. Christopher Garriga as a candidate for Lincoln Parish Police Jury, District 6. For the following reasons, we affirm.
FACTS
On September 10, 2015, Christopher Garriga filed a notice of candidacy for the above-mentioned office in the office of the Clerk of the Third Judicial District Court. Among other things, Garriga certified on this notice that:
I do -not owe any outstanding fines, fees or ..penalties, pursuant to the Code of Governmental Ethics.
*196 On September 15, 2015, the Board filed a lawsuit in the Third Judicial District Court against Garriga and the Lincoln Parish Clerk of Court. The Board urged that Garriga’s certification that he owed no fees was false because Garriga did indeed owe an unpaid late fee at the time he qualified. The Board alleged that on January 8, 2015, the Board issued an order making final a $1,500 late fee assessed to Garriga for failing to timely file a 2012 Tier 2.1 Annual Personal Financial Disclosure Statement. Further, the Board alleged that as of the September 10, 2015, certification, Garriga had not paid this fee. Accordingly, the Board asked the district court to disqúalify Garriga as a candidate.
| aThe case was originally assigned to Judge Cynthia Woodard. On September 18, 2015, Judge Woodard issued an order stating in part:
Inasmuch as the Honorable. Cynthia T. Woodard, Division A of this Court, and her husband have had a long-standing business relationship with the defendant and so to avoid the appearance of impropriety:
IT IS ORDERED that Cynthia T. Woodard, Judge Division A of this Court, does hereby recuse herself from all matters in connection with this case, and does hereby refer the matter for assignment by the Clerk of Court.
IT IS FURTHER ORDERED that the Clerk of Court notify all parties involved.
THIS DONE AND SIGNED in Ruston, Lincoln Parish, Louisiana, on this 18th day of September, 2015.
' That day,[1] the case was reassigned to Judge Thomas Rogers, and again that same day, Judge Rogers signed an order setting the trial of the case for 11:00 a.m. on September 24,2015.
On September 23, 2015, Garriga filed a motion to dismiss the Board’s lawsuit. Garriga asserted that La. R.S. 18:1409 specifies that the trial of an -election contest. suit shall begin.no later than 10:00 a.m. on the fourth day after suit was filed. Because the record showed that the Board filed its lawsuit on September 15, 2015, and the trial was not' set to be heard until September 24, 2015, the mandatory timeliness provision of the statute had been violated, and Garriga argued that the untimely setting of the case for trial was fatal to the Board’s action.
On September 24, 2015, the district court’ called the matter for trial. The Court first entertained Garriga’s motion to dismiss. Ms. Linda Cook, the Clerk of the Third Judicial District Court, testified that qualifying for the office of police juror commenced on September 8, 2015, and ended on September 10, 2015. Ms. Cook explained that the Board’s lawsuit was fax filed to her office on September 15, 2015, followed by an original copy ^received on September 16, 2015. She reviewed the Board’s lawsuit and noted that:
—the order setting the. lawsuit for a hearing contained blanks to be .filled in by the trial judge for the date that the case was to be set . for a hearing, and that these blanks were “usually filled in by the judge;”.
—neither the Board’s lawsuit nor its order informed the judge that the case had to be tried within four days of filing;
—the trial was not actually held within four days .of filing;
—rthe trial of the defendant’s motion was ■ presently occurring at 11:19 a.m. on September 24,2015;
—none of the Board’s attorneys informed her office that the mat- *197 . ■ ter had to be tried within four • days of filing;
—Garriga’s attorney did nothing to delay the proceedings;' and
—once the Board was notified that the date of trial was to be September 24, 2015, the Board did not ask that the trial be held earlier.
Ms. Cook also testified that she was not familiar with the recusal of Judge Woodard in this case and the reassignment of the case to another judge, and she did not know when the lawsuit was given to Judge Woodard but noted that on September 18, 2015, Judge Rogers set the case for trial oh September 24. ■ •
The trial court deferred its ruling on the candidate’s motion to dismiss and then held the trial of the Board’s lawsuit. The Board’s first exhibit was Garriga’s notice of candidacy where he certified that he owed no outstanding, fees. The court then admitted into evidence the Board’s Exhibit 4, which, was an affidavit from. Robin Gremillion, Disclosure Section Director for the Ethics. Administration Program, stating that as of September 11, 2015, Garriga had not.paid a $1,500 assessment for failing to timely file required personal financial disclosure reports. The court then admitted the Board’s | ¿fifth exhibit, an affidavit from Deborah Grier,. Executive Secretary for the Board of Ethics, stating that two attached exhibits were genuine copies of Board records. Exhibit 5, as included in this appellate record, does hot havé any attached exhibits. However, at trial, the Board’s attorney referred to two exhibits that appear to be these documents:
Exhibit 2: A January 8, 2015, letter from the Board to Garriga informing Garriga that he had been assessed a late fee of[1] $1,500 for failing to, timely file a Tier 2.1 Annual Personal Financial Disclosure Statement for 2012. This Tetter informed Garriga that he could pay the fee or appeal. Although the letter indicates that it was sent by certified mail, the copy of the letter / exhibit .in the appellate record does not reflect a certified mail receipt.
Exhibit 3: A March 20; 2015, letter from the Board to Garriga informing the candidate that the Board, at a March 20, 2015, meeting, had considered and denied Garriga’s request for a “good cause” waiver of the late fee.
This letter directed Garriga either to pay the late fee or, within 30" days, file a dispute of the assessment by requesting reconsideration or appealing to the Ethics Adjudicatory Board.
The letter informed the candidate that if he did not pay or appeal, the late fee would be turned over to the Attorney General’s office for collection and that the Board would object to his candidacy in future elections if the fee was not paid.
This exhibit is accompanied by a certified mail receipt that was signed by Chris Garriga on March 25,2015.
The Board’s only witness was the candidate, Chris Garriga. Garriga admitted that he had read the January 8, 2015, notice from the Board assessing him with a $1,500 penalty.[1] Garriga also stated that he requested a waiver of that fee.
. Garriga was shown S-3, the notice from the Board that his request for a waiver had been denied. He admitted that the signature on the certified mail receipt was his but testified that he had never seen the accompanying lfiletter. He said: “I can’t *198 say what happened to the letter. I know I did not see the letter.” He explained that if he had seen the letter, he would' have appealed the denial of his request for a waiver.
During questioning by the Board’s attorney, the candidate explained his understanding of the situation:
Q: You asked for a waiver of your fees that were owed, correct?
"A: "Yes, sir.
Q: Were you ever told by anybody that those fees were waived?
A: I didn’t receive a letter from you guys, but I assumed that it was taken care of.
Q: And what basis do you have to believe that it was taken,care of?
A: Cause I did everything that Robin Gremillion asked me when I called her, and she said just to submit a letter saying that I ask for the fees to be waived, and I also submitted a letter on behalf of — from the President of CVB asking that those be waivéd on my behalf also.
Q: Okay. But you never received any words from anybody?
A: No, sir.
[[Image here]]
Q: When you were given opportunity to suggest that you filed [your documents] in a timely manner, did you take that opportunity, ever ask. for a hearing to prove they were timely filed?
A: I did not ask for a hearing. I did what the investigator asked me to do. I did what — when I called and asked Robin Gremillion what to do, I did what she asked me to' do. Nobody ever said hey, and by the way, you can come to a trial if you want. Robin Gremillion made it sound very, very clear that as long as I submitted an appeal letter that it would be okay. I mean, she . made it very clear. It was just kind of like a due process. I was going to ask her a couple of questions, and her response each time was “just submit an appeal letter.” “Just submit an appeal letter.”
Garriga explained that he was unable to attend a hearing on his waiver request due to a conflict with a scheduled surgery for his child. At that point, the Board rested its case, and the candidate moved for a directed verdict, arguing that the Board had not proven that Garriga’s fine was indeed 16final and that no appeal was pending. The court denied that motion, and then the candidate testified on. his own behalf.
Garriga explained that he had served in an uncompensated role on the Lincoln Parish Convention and Visitor’s Bureau Board for six years. He testified that he had filed “multiple” personal financial disclosure statements in conjunction with his service on that Board. He further explained that he filed one of these statements without a date because the form seemed to be asking for disclosure about the previous year and the current year; Garriga believed that the Board would fill in the appropriate year for hirii.
However, Garriga said that in June 2014, he received a letter from the Board informing him that he was being investigated for failing to file a 2012 Tier 2.1 Personal Financial Disclosure Statement. Garriga introduced that letter as an exhibit along with another exhibit, a copy of an email conversation between Garriga and the Board where Garriga sent the Board that completed 2012 Statement in October 2014. Garriga’s other exhibits included another copy of the January 8, 2015, notice of a late fee assessment.
*199 Garriga next introduced an undated letter from himself to the Board of Ethics requesting a waiver of the late fee and explaining that he believed that he had filed the required Statement in- January-2014 but simply had no proof of its filing. In his letter, the candidate also informed the Board that his position on the Convention and Visitors’ Bureau was unpaid and that-he did not financially benefit from his service. Likewise, the President of the Convention and Visitors’ Bureau, Mr. Travis Napper, wrote a letter to the Board in January 2015 on Garriga’s behalf praising Garriga’s. service, |7expressing his belief that Garriga had complied with the Board’s requests for information, and asking for a waiver.
Garriga’s next exhibit was a February 9, 2015, letter to him from the Board stating:
This correspondence is to acknowledge receipt of your recent submission- of a request for an advisory opinion or waiver of a late fee. Your submittal is identified by the Ethics Board docket num-. ber referenced above and is tentatively scheduled to be placed on the agenda for the Board’s consideration at its March 20, 2015 meeting..
If you would like to schedule an appearance before the Board of Ethics at that meeting in connection with this matter, please contact Tracy Barker at the numbers above. Your inclusion of the above docket number in future communications to this- office will be appreciated.
Garriga then offered into evidence a September 15, 2015, letter from the Board to him informing the candidate that he had been assessed a late fee on January 18, 2014, and that if Garriga did not pay the fee within 15 days of that date, the fee would be turned over to the Attorney General’s office for collection and that any unpaid fees may have an adverse effect “on your ability to run for public office, as the Board of Ethics will objéet to your candidacy in future elections pursuant to La. R.S. 18:491 and 18:492.” Garriga testified that he received this letter on Friday, September 18, 2015, and was not served with the Board’s lawsuit until Monday, September 21. He said that he was “shocked” to find that the-late fee was still outstanding “[bejeause I hadn’t heard anything in months about this issue.” He again explained that, although he signed the certified mail receipt, he had not seen the March 20, 2015, letter informing him that the Board had rejected his request for a waiver, because if he had seen it, he would have responded.
Through his attorney, Garriga mailed the Board payment for the $1,500 fee on Séptember 23,2015. He flatly said that he had no intent to ^deceive or defraud the Board when filing his notice of candidacy. The Board thoroughly cross-examined Garriga about his understanding of, among other things, the filing requirements, relevant dates and his knowledge, of the late fee assessment and appeal process.
:The candidate also called his wife Jennifer Garriga as a witness. She explained that she was familiar with her husband’s dealings with the Board- and that she and her husband had conversations about the letters he received from the Board. She said that prior to September 2015, the last conversation she had with her husband about these matters was in February 2015, and that her husband, expressed surprise to her about the September 2015 letter because “he thought [that] had been taken care of.” Like her husband, Mrs. Garriga testified that she had not seen the March 20,2015, letter from the Board.
After a brief recess, the judge returned to the bench, The judge first denied the candidate’s motion to dismiss the case because of the -untimely trial setting, -but *200 then rejected the Board’s challenge to Garriga’s candidacy, stating, in part:
I found that throughout Mr. G'arriga’s testimony, I found him to be candid. He admitted getting the green card and signing the green card with respect to the March 20, 2015, letter from the Board of Ethics. But I also found him to be very credible when he discussed the conversations he had with representatives of the Board of Ethics, in particular Robin Gremillion, and based on his testimony, I believe that Mr. Garriga has a reasonable basis to assume that his letter to the Board ... — I believe that he thought in sending that letter that that could have very well resolved the issue with the Board. I also .note "that letter from the Board to Mr. Garri-ga dáted February 9, 2015, it did not require any — -it did not require his presence, did hot recommend his presence or any other response from him and that it also did use the word “tentatively” with respect to the scheduling of the appeal on March 20, 2015. So I could see where there could be some doubt in his mind as to whether ■ or not his presence was required or -even if- the hearing ■would take place on that date. -
RThe court further noted' that the March 20, 2015, letter to Garriga gave him another month to pay the fee but the Board did not' ttiéreafter follow up with aiiy other Correspondence to Garriga until'after qualifying had ended when it sent him another letter. Thé Court explained: ' •1
The Court may find that Mr. Garriga was inattentive and perhaps disorganized in failing to read that letter of March 20, 2015, but the Court certainly does not find that — anything in his testimony that would indicate, raise any doubt over his belief when he signed that Notice of Candidacy that , he was truthful when he said he had no outstanding fees or penalties.
So, although [the Board] certainly carried the state’s initial burden óf proof in -this- matter, the combined testimony of both Mr. and Mrs. Garriga, and certainly Mrs. Garriga’s testimony corroborated everything that Mr. Garriga said, the Court finds that their testimony rebutted the state’s allegation of the false certification and nothing in [the Board’s] cross-examination cast any doubt as to the truthfulness of Mr. Garriga’s or Mrs. Garriga’s testimony.
The court signed a- judgment denying the Board’s challenge to Garriga’s candidacy, and the Board took a timely appeal. The record was lodged in this Court on September 28, 2015. That same day, Mr. Garriga filed an answer to the appeal in .this Court-challenging the trial court’s ruling that maintained the Board’s lawsuit despite the untimeliness of the trial under La. R.S. 18:1409. The Board responded to Garriga’s answer asserting that it was untimely. 1 -
DISCUSSION
At the outset, this Court’s review of the record "does not reveal that the Board shared ariy responsibility for the untimely setting of the trial of this matter[2] or that the candidate suffered any prejudice thereby. Compare Scoggins v. Jones, 442 So.2d 1202 (La.App. 2d Cir.1983), writ denied, 444 So.2d 113 (La.1983) and writ denied, 444 So.2d 623 (La.1984). We con- *201 elude that the trial court properly denied the candidate’s motion to dismiss this election contest suit.[3]
Assignment of Error 1. The Honorable Judge Tommy Rogers committed manifest error by finding that Christopher Garriga rebutted the Board’s prima facie case by asserting that he believed he did not owe the late fee when he failed to open the letter declining his late fee waiver, which letter he personally signed for, and; therefore, he did not falsely certify in his Notice of Candidacy that he did not owe any fines, fees or penalties pursuant to the Code of Governmental Ethics. •
After hearing the evidence, the trial court concluded that the Board of Ethics presented a prima facie case that Mr. Garriga owed an outstanding late fee at the time he filed his notice of candidacy.[4] However, based upon its evaluation of the credibility of the witnesses, the .court concluded that Garriga’s certification that he owed no outstanding late fees was not false when it was made, so the court refused to disqualify Garriga. The Board urges that regardless of the trial court’s assessment of the candidate’s credibility and determination of what the candidate knew at the time of certification, the candidate simply did not present any evidence that he did pot actually owe the late fee at the time of certification. Thus, the Board argues, the trial' court erred in concluding that Garriga had rebutted the Board’s prima facie case.
|nThe law governing these election cases is largely well-settled; see State of Louisiana Board of Ethics v. Arnold, Nos. 50,553, 50,554 (La.App.2d Cir.09/28/2015), 184 So.3d 60, 2015 WL 5678445.[5]
*202 haThe evidence reflects that the Board sent Mr. Garriga a notice on January 8, 2015, that he owed a late fee for failing to timely file a financial disclosure report, and Mr. Garriga admitted that he received this notice. Likewise, he admitted that he requested a waiver of the late fee and he further admitted signing the certified mail receipt for the notice of denial that hathe Board sent him in March 2015. However, the candidate admitted that he did not actually read the notice from the Board informing him that his request for a waiver had been denied.
La. R.S. 18:492 provides that an action objecting to the candidacy of a person shall be based on, among other things, proof that the defendant “falsely” certified on his notice of candidacy that he does not owe any outstanding fees pursuant to the Code of Governmental Ethics. Jurisprudence demonstrates that the term “falsely” has both an objective component and a subjective component. For example, in Russo v. Burns, 2014-1968 (La.9/24/14), 147 So.3d 1111, the Supreme Court concluded that a candidate falsely certified on his notice of candidacy that he had filed his tax returns because the candidate did not know that *203 the tax returns he allegedly caused to be mailed had actually been delivered and thus filed under, the. LDR regulations. The court rejected the candidate’s argument that he reasonably believed he had filed his returns because his tax preparer told him that the returns had been mailed.
In this case, the candidate inexplicably failed to-read the actual notice from the Board that his request for a waiver had been denied. However, unlike Russo, the candidate presented evidence through his own testimony that he genuinely believed that he did not owe the late fee based upon his conversations with employees of the Board of Ethics itself. Garriga submitted proof that he filed, albeit untimely, the required financial disclosure statement for 2012, and that he followed the instructions he received from the Board about how to obtain a waiver of the late fee. As Garriga explained:
luBobin Gremillion made it sound very, very clear that as long as I- submitted an appeal letter that it would be okay. I mean, she made it very clear. It was . just kind of like a due process. I was going to ask her a couple of questions, and her response each time was “just submit an appeal letter.” “Just submit an appeal letter.”
This record is replete with plain and candid responses from Garriga explaining his actions in response to the Board’s communications with him, and indeed the evidence shows that at least from October 2014 on, the candidate responded to the other communications from the Board with requested information or action. The trial court concluded that despite Mr. Garriga’s “inattentive and -perhaps disorganized” failure to read the March 2015 letter from the Board, he had a reasonable belief that he owed no late fee when he filed- his notice of candidacy owing to his prior conversations with the Board and the Board’s failure -to communicate with him further between' March 2015 and the date of qualifying. A thorough review of all of the documentary and testimonials evidence does not reveal manifest error in the trial court’s conclusion.
Accordingly, the judgment of the district court is affirmed.
AFFIRMED.

. Apparently this document was sent by certified mail and was signed for by the candidate’s babysitter.

. .Considering the countless orders that come before a state district judge on a daily basis, it might help prospectively if the Board placed a boldface notice on the judge's signature page, alerting the .court that- the- election hearing must occur within four days of the filing of the petition. The Board is in the best position to alert the district judge that the trial should be expedited1 and to prevent unnecessary delay. ■ ■ .

. La. R.S. 18:1409 does not contain any specific provision providing for the filing of an answer in an election appeal. In this case, the subject matter of the appellee’s answer arguably impacts the jurisdiction of the lower court, and the answer was filed on the day the appellate record was lodged, so we have considered the merits of the candidate:s answer.

. We observe that Mr. Garriga paid his late fee prior to the commencement of trial but aftér the end of the qualifying period.

. Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. Landiak v. Richmond, 05-0758 (La.3/24/05), 899 So.2d 535, 541.
Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections "so as to promote rather than defeat candidacy.” ... Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office.
[[Image here]]
[Tjhe party on which the burden of proof rests must establish a prima facie case. If that party fails to carry his burden of proof, the opposing party is not required to present any countervailing ■ evidence. On the other hand, once the party- bearing the burden of proof has established a prima.facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case.
Id., internal citations omitted.
A trial court’s factual findings are accorded great wéight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). After reviewing the entire record, the appellate court may reverse the trier of fact’s findings if there is no reasonable factual basis for such findings, and the record establishes that the trier of fact was clearly wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
Even, where the appellate court believes its inferences-are more reasonable'than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is con *202 vinced that had it been sitting as the trier of fact it would have weighed that evidence differently. Housley v. Cerise, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
A person who fails to file a required financial disclosure statement under La:. R.S. 18:1495.7 is subject to penalties as set forth in the Code of Governmental Ethics, specifically La. R.S. 42:1124.4; see also La. R.S. 42:1157.
La. R.S. 18:463 provides, in part:
(2)(a) The notice of candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
[[Image here]]
(vii) That he does not owe any outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics.
[[Image here]]
(c) For the purposes of this Paragraph:
[[Image here]]
(ii) "Outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics” shall mean a fine, fee, or penalty equal to an amount of two hundred fifty dollars or more imposed by the Board of Ethics for which all appeals have been exhausted.
(iii) "Outstanding fine, fee, or penalty” shall not mean any fine, fee, or penalty that has been paid in full as of the time of the filing of the notice of candidacy.
La. R.S. 18:492 provides, in part:
A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
[[Image here]]
(6) The defendant falsely certified on his notice of candidacy that he does not owe any outstanding fines, fees, or penalties pursuant to the Code of Governmental Ethics as provided in R.S. 18:463(A)(2).
La. R.S. 18:494 provides:
A. Disqualification. When an objection to candidacy is sustained on the ground that the defendant failed to qualify for the primary election in the manner prescribed by law, that the defendant failed to qualify for the primary election within the time prescribed by law, or that the defendant does not meet the quálifications for the office he seeks, the final judgment shall disqualify the defendant as a candidate in the primary election for the office for which he failed to qualify properly.
B. Withdrawal. When an objection to candidacy is sustained on the ground that the defendant is prohibited by law from becoming a candidate for one or more of the offices for which he qualified in the primary election, the final judgment shall order the defendant to remove the grounds for the objection by withdrawing from the primary election for one or more of the offices. If the defendant fails to comply with this judgment within twenty-four hours after it becomes definitive, the court shall render judgment disqualifying the defendant as a candidate for all of the offices for which he qualified in the primary election.